IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASHLEY M. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-043-MN-LDH |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | FILED |
| Commissioner of Social Security, | ) | |
| | ) | JAN 16 2024 |
| Defendant. | ) | |

U.S. DISTRICT COURT DISTRICT OF DELAWARE

## REPORT AND RECOMMENDATION

Plaintiff Ashley Hill ("Ms. Hill" or "Plaintiff") appeals from an unfavorable decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits and supplemental security income. The parties' cross-motions for summary judgment are pending before the Court. (D.I. 10, 11). Ms. Hill asks that the Court direct that she be awarded benefits. (D.I. 10). The Commissioner asks the Court to affirm the Commissioner's decision. (D.I. 12). For the following reasons, I recommend that Ms. Hill's motion for summary judgment be DENIED and that the Commissioner's cross-motion for summary judgment be GRANTED.

I.  BACKGROUND

Ms. Hill filed for disability insurance benefits and supplemental security income alleging a disability beginning on February 26, 2020 due to general anxiety, major depressive disorder, bipolar II disorder, and borderline personality disorder. (D.I. 6 (hereinafter "Tr.") at 42, 177–83). Ms. Hill's claim was denied twice: initially on August 21, 2020 (Tr. at 40–53) and upon reconsideration on December 28, 2020 (Tr. at 54–67).

Upon Ms. Hill's request, an Administrative Law Judge ("ALJ") held a hearing at which Ms. Hill testified regarding her educational background, work history, and mental health. (D.I. 8 (hereinafter "Supp. Tr.") at 477–86). The ALJ also heard testimony from a vocational expert on potential limitations for a person similarly situated to Ms. Hill in terms of ailments. (Supp. Tr. at 487–94). On April 21, 2022, the ALJ issued a decision denying Ms. Hill's request for benefits. (Tr. at 9–24). Ms. Hill requested that the Social Security Administration's Appeals Council review the ALJ's decision (Tr. at 174–76), and on November 17, 2022, the Appeals Council denied her request. (Tr. at 1–5).

On January 13, 2023, Ms. Hill filed a complaint in this Court invoking her right under 42 U.S.C. § 405(g) to judicial review of the ALJ's decision. (D.I. 1). Ms. Hill moved for summary judgment, arguing that the Commissioner erred in finding her not disabled. (D.I. 10). The Commissioner opposed and cross-moved for summary judgment (D.I. 11) arguing that the ALJ's finding that Ms. Hill was not disabled is supported by substantial evidence (D.I. 15).

## II.   LEGAL STANDARD

Courts have plenary review over the Commissioner's legal conclusions but review the Commissioner's factual findings for "substantial evidence." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler*, 667 F.3d at 359; *see also Zirsnak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014).

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). The Third Circuit has previously explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations. In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity. If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. The claimant bears the burden of demonstrating an inability to return to his past relevant work. If the claimant does not meet the burden the claim is denied.
>
> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

### III.   DISCUSSION

The ALJ determined that Ms. Hill had several severe mental impairments. (Tr. at 12). The ALJ also determined, however, that Ms. Hill's impairment or the combination of her impairments did not match one presumed severe enough to preclude gainful work entirely under 20 C.F.R. § 404, Subpt. P, App. 1. (*Id.*). Instead, the ALJ found that Ms. Hill could perform work that did not require more than occasional interaction with the public, supervisors, and coworkers, meaning that, although Ms. Hill could not perform her past work, she could perform any number of other jobs. (Tr. at 18–19).

Ms. Hill sets forth several grounds for reversal of the Commission's denial. As an initial matter, she argues that the ALJ misapplied the law by applying incorrect standards in evaluating her ability to sustain gainful activity. (D.I. 10 at 16–18). She further argues that the ALJ erred in failing to adequately consider comorbidity effects in evaluating the severity of her limitations (*Id.* at 17), by considering her post-employment and at-home activities as evidence in evaluating the severity of her limitations (*Id.* at 9–11, 18), in weighing the evidence while evaluating the severity of her conditions (*Id.* at 7–9, 11–15, 18–19), and by failing to properly consider expert testimony from the July 27, 2021 hearing (*Id.* at 19–21).

Ms. Hill argues that the ALJ erred by applying standards at step three of the analysis that she says are better suited for evaluating an applicant with autism spectrum disorder or ADHD, rather than her diagnoses of bipolar disorder, generalized anxiety disorder, and borderline personality disorder. (*See id.* at 16–18). But, step three requires the ALJ to make a determination about whether an impairment is severe by comparing the claimant's ailments to those presumed severe enough to preclude gainful work according to the Regulations. *Newell*, 347 F.3d at 545–46. When doing so, an ALJ considers whether an impairment "significantly limit[s] [the

applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). For mental disorders, including bipolar, anxiety, and personality and impulse-control disorders, an ALJ considers "functional criteria…to evaluate how [the applicant's] mental disorder limits [their] functioning." 20 C.F.R. § 404, Subpt. P, App. 1. These functional criteria "represent the areas of mental functioning a person uses in a work setting," and consist of the following: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* An applicant with these mental disorders is not disabled at step three unless they have an "extreme" limitation under one of these criteria or a "marked" limitation of two. *Id.* The ALJ found that Ms. Hill has medically determinable impairments in the form of bipolar II disorder, generalized anxiety disorder, and borderline personality disorder. (Tr. at 12–14). Then, as required, the ALJ considered the impact that her medically diagnosed ailments had on the functional criteria in determining that Ms. Hill's limitations were not "extreme" or "marked." (*Id.*). I do not see any misapplication of the law in the ALJ's analysis at step three.

Similarly, the ALJ did not err by failing to consider comorbidity effects in evaluating the severity of Ms. Hill's limitations. In arguing otherwise, Ms. Hill writes that multiple diagnosed conditions can interact to product symptoms more severe than those of any of the individual conditions observed in isolation, and that the ALJ failed to consider the cumulative effect. (D.I. 10 at 17). However, the step three inquiry does not only look to the severity of the condition or conditions as the step two inquiry does; rather, when the conditions are mental disorders, it looks to the extent to which those conditions impair the applicant's work-related mental functioning. *Compare* 20 C.F.R. § 404.1520(c) (stating that an applicant who does not have a severe impairment is not disabled), *with* 20 C.F.R. § 404.1520(d) *and* 20 C.F.R. § 404, Subpt. P, App. 1 (setting forth work-related functional criteria that govern the step three analysis). The ALJ properly considered

evidence of Ms. Hill's mental functioning as a whole, not limited to one specific mental ailment, including evidence from the record regarding her memory, judgment, interaction with others, concentration, and attention, evaluating the severity of her limitations with respect to the four functional criteria rather than focusing on the severity of her conditions untethered to those four criteria. I do not find error in the ALJ specifically failing to discuss comorbidity effects under these circumstances.

Ms. Hill also objects to the ALJ's consideration of her post-employment and at-home activities as evidence of her ability to sustain gainful work activity. But, an ALJ is to consider all evidence in the case record when making a disability determination. 20 C.F.R. § 404.1520(a)(3). Writing to the applicant from the point of view of the Social Security Administration, Appendix 1 to Subpart P of 20 C.F.R. § 404 states that:

> We will consider all relevant evidence about your mental disorder and your daily functioning that we receive from you and from people who know you . . . . We will consider whether your statements and the statements from third parties are consistent with the medical and other evidence we have. . . . We will consider the complete picture of your daily functioning, including the kinds, extent, and frequency of help and support you receive, when we evaluate your mental disorder and determine whether you are able to use the four areas of mental functioning in a work setting. The fact that you have done, or currently do, some routine activities without help or support does not necessarily mean that you do not have a mental disorder or that you are not disabled. For example, you may be able to take care of your personal needs, cook, shop, pay your bills, live by yourself, and drive a car. You may demonstrate both strengths and deficits in your daily functioning.

Thus, the Regulations contemplate that evidence from outside the workplace may be used not only to establish a disability, but also to evaluate an applicant's mental functioning during the step three analysis. Accordingly, the ALJ did not err in considering such evidence.

Finally, Ms. Hill asks the Court to reverse the ALJ's decision because there is substantial evidence that her conditions prevent her from sustaining gainful activity. (D.I. 10 at 6–7). The Court's inquiry, however, is different. When an applicant appeals the Commissioner's denial of

disability benefits, I only review whether substantial evidence supports the Commissioner's findings. I am not permitted to "re-weigh the evidence or impose [my] own factual determinations." *Chandler*, 667 F.3d at 359. The ALJ gives detailed reasoning at each step of the analysis, addressing both evidence that supports his decision as well as evidence that would support a contrary finding before ultimately concluding that the evidence weighs in favor of denying Ms. Hill's claims.

Ms. Hill's only remaining argument directed to the insufficiency of the ALJ's analysis is that he failed to consider testimony from a vocational expert in its proper context. (D.I. 10 at 19–20). Ms. Hill argues that "the vocational expert testified that a hypothetical employee exhibiting the same symptoms and situations that the plaintiff has had at her past jobs would not lead to gainful employment regardless of exertional levels." (*Id.* at 20). The vocational expert testified that a hypothetical individual with non-exertional impairments only who is limited to only occasional interaction with coworkers, supervisors, and the public would be unable to do Ms. Hill's past work. (Supp. Tr. at 487). The ALJ *also* considered the vocational expert's testimony that Ms. Hill *would* be able to perform the requirements of several listed occupations. (Tr. at 20; Supp. Tr. 487–88). While the vocational expert also testified that an individual might be precluded from employment under various other hypotheticals (Supp. Tr. at 488–94), the expert was discussing hypothetical conditions that might, but do not necessarily, reflect Ms. Hill's limitations. Consistent with the vocational expert's testimony, the ALJ found that Ms. Hill was unable to perform any past relevant work. However, consistent with the vocational expert's testimony, the ALJ ultimately determined that Ms. Hill's limitations were such that she *could* perform other work and, accordingly, determined that there are occupations available in the national economy that are within Ms. Hill's capabilities considering her age, education, work experience, and residual

functional capacity. (Tr. at 14–18, 19–20). Accordingly, the ALJ properly considered the vocational expert's testimony, and I find that there is substantial evidence to support the ALJ's conclusions.

### IV. CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's motion for summary judgment (D.I. 10) be DENIED, that the Commissioner's cross-motion (D.I. 11) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: January 16, 2023

Laura D. Hatcher
United States Magistrate Judge